IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.     Case No.:  20-cr-137-wmc

MICHAEL EISENGA,

Defendant.

UNITED STATES' OBJECTION TO DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE

Michael Eisenga has filed a motion for compassionate release under the First Step Act of 2018. (R. 50). He contends that his obesity, sleep apnea, asthma, hypertension, diabetes, and possible autoimmune disorder make him more likely to contract COVID 19 and more likely to suffer severe consequences if he does contract the virus. (Id. at p. 2). As of March 21, 2022, Eisenga has served just seven months of a 42-month sentence and is fully vaccinated against COVID-19 (including receiving a booster on March 15, 2022). The government opposes Eisenga's motion.

I.     Background

On March 25, 2021, Michael Eisenga pled guilty to bank fraud, in violation of 18 U.S.C. § 1344(2)  (R.22). On behalf of his company, Eisenga sought a mortgage loan from Alliant for commercial properly located in Columbus, Wisconsin. (R. 25). In connection with the loan application, he falsely represented to Alliant that his company had already secured Festival Foods, Inc., as a tenant for the property through a 20-year lease agreement and that another company, Supervalue Holdings, Inc., had guaranteed the lease. (Id.). Eisenga also provided Alliant with two signed documents he represented to

be his company's lease with Festival Foods, Inc., and the guarantee from Supervalue Holdings, Inc.; however, neither of the documents were genuine. (Id.). No lease ever existed between his company and Festival Foods, Inc., and Supervalue Holdings, Inc., never guaranteed any lease with CCC Lot. 2. Alliant approved his company for the loan on February 2, 2017, based on the Eisenga's false representations and documents. The loan closed on March 3, 2017, and Alliant paid out proceeds of approximately $6.9 million. (Id.).

Eisenga's company defaulted on the loan and when Alliant asked Eisenga for an explanation, Eisenga provided Alliant with a Lease Cancellation Agreement, purporting to an agreement that terminated CCC Lot 2's lease with Festival Foods, Inc., effective February 28, 2018; however that the document was also not genuine. (Id). On June 23, 2021, this Court sentenced Eisenga to 42-months in prison, a sentence below the advisory-guideline range, and allowed him to self-report on July 30, 2021 (R. 36). Eisenga asked for an extension of his report date (R. 42), and the Court extended the date to August 31, 2021. (R. 43).

Eisenga, 50, is currently incarcerated at the minimum-security camp at USP Thompson, a federal prison in Thompson, Illinois. His projected release date is August 23, 2024.[1] According to data from the BOP website on March 24, 2022, USP Thompson currently has no COVID-19 positive inmates and no COVID-19 positive staff members. To date, 754 inmates and 105 staff have recovered. The facility has had no inmate deaths and one staff death.[2]

---

[1] https://www.bop.gov/inmateloc/

[2] https://www.bop.gov/coronavirus/

According to data on the BOP website on March 24, 2022, USP Thompson houses 943 inmates. There are 815 inmates in the high-security penitentiary portion of the prison and approximately 128 inmates at the satellite minimum security camp, where Eisenga is incarcerated.[3] To date, 817 inmates and 378 staff members have received both doses of the COVID-19 vaccine.[4] According to information provided by the BOP, Eisenga received his first and second doses of the COVID-19 vaccine pre-incarceration on August 7, 2021 and August 30, 2021. (Gov't Ex. 1). He recently received his COVID-19 booster shot from the BOP on March 15, 2022. (Gov't Ex. 2).

For COVID-19, BOP classifies its institutions' operational levels as either a Level 1 (minimal modifications), Level 2 (moderate modifications), or Level 3 (intense modifications).[5] These classifications are based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective county transmission rates. At each level, an infection prevention procedure or modification to operations such as inmate programming and services may be made to mitigate the risk and spread of COVID-19. *Id*.

USP Thompson is currently under Level 1 operating procedures.[6] The BOP website specifies that Level 1 operating procedures are used when there is a medical medical isolation rate of less than 2%, a facility vaccination rate of at least 65%, and a

---

[3] https://www.bop.gov/locations/institutions/tom/

[4] https://www.bop.gov/coronavirus/

[5] https://www.bop.gov/coronavirus/index.jsp

[6] https://www.bop.gov/locations/institutions/tom/

3

community transmission rate of less than 50 per 100,000 over the last 7 days. Levels are raised or lowered after 48 hours of respective sustained increases or decreases in the aforementioned indicators.[7]

## II. Legal Framework

Section 603(b) of the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate to move the sentencing court for compassionate release, provided that the inmate has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to make such motion, or if thirty days has lapsed from the receipt of such a request by the warden, whichever is earlier.

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

## III. Argument

### A. Exhaustion Requirement

Section 3582(c)(1)(A) allows a Court to consider a motion for compassionate release after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

---

[7] https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp

whichever is earlier. Here, Eisenga has attached to his motion a letter sufficiently demonstrating that he has exhausted his administrative remedies. (R. 50-1).

B. Eisenga's Health Conditions Due Not Constitute an "Extraordinary and Compelling Reason" in Light of His Vaccination Status

The Seventh Circuit has clearly held that, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). S*ee also, United States v. Ugbah,* 4 F.4th 595, 597 (7th Cir. 2021) ("prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release"); *United States v. Kurzynowski*, 17 F.4th 756, 760-61 (7th Cir. 2021) (finding any error in denying relief to vaccinated inmate with hypertension, diabetes, and obesity would be harmless in light of *Broadfield*).

Eisenga argues that the *Broadfield* holding is wrong and should be ignored because it has been "overtaken by the facts." (R. 50, p. 41). He points to the fact that Eisenga has not received the booster (a fact no longer true) and the fact that the rapid spread of the Delta and Omicron variants have shown that vaccines are not 100% effective at preventing the virus or death from the virus.

However, since the beginning of the spread of the Delta and Omicron variants, the Seventh Circuit has reaffirmed the rationale in *Broadfield. In United States v. Barbee*, the Seventh Circuit affirmed a district court's denial of compassionate release for a defendant who suffered from obesity, Type II Diabetes, and hypertension. 25 F.4th 531, 533 (7th Cir. Feb. 2022). Relying on the holdings in *Broadfield* and *Ugbah* together with the fact that the defendant had received two doses of the Moderna COVID-19 vaccine,

5

the Seventh Circuit concluded that the defendant had not met his burden to establish extraordinary and compelling circumstances warranting relief. *Id*. The court commented that while the defendant contended that he remained at risk as the COVID-19 situation continued to evolve, he failed to present any evidence establishing that he is more at risk for an adverse outcome in prison than he would be if released. *Id*.

Eisenga points to two district court cases not in the Seventh Circuit to support his argument that this Court should disregard *Broadfield*, *United States v. Highsmith*, No. 7:15-CR-71-BR, 2022 WL 188175 (E.D.N.C. Jan. 20, 2022) and *United States Brunetti*, (S.D.N.Y. Jan. 10, 2022). Neither of these decisions can overcome the Seventh Circuit's binding precedent, but a closer examination of those cases shows the district courts' reasoning is not persuasive here in any event.

In *Highsmith*, the district court granted compassionate release to a 55-year-old inmate who was overweight, prediabetic, and suffered from hypertension and the residual effects on his lungs from having had tuberculosis. 2022 WL 188175 at *2. The court made this decision despite the defendant being in facility with over a 90% inmate vaccination rate. *Id*. at *3. In doing, the court noted that breakthrough infections could occur despite vaccinations and that 24 inmates and 25 staff were currently positive. *Id*. However, a closer reading of the opinion shows that, in granting relief, the court also relied on a medical condition that was redacted from the opinion: "Considering collectively defendant's age, his health, the conditions at FCI Williamsburg considering COVID-19 (particularly with the Omicron variant), and [redacted], the court finds that defendant has shown extraordinary and compelling reasons to warrant further consideration of his motion." *Id*. This mystery medical condition, which was obviously

6

significant to the court, Highsmith's prior tuberculous, and different circumstances at Highsmith's prison, all make Eisenga's case distinguishable.

In *United States v. Brunetti* the district court granted compassionate release to an inmate who had already served 20-years on a life sentence, which the defendant would not have received if sentenced today due to changes in the law. In finding the defendant's health conditions met the threshold showing for extraordinary circumstances, the court noted that breakthrough infections could still occur even among vaccinated individuals and that those infections could still cause severe illness or death especially for those vulnerable due to certain health conditions. In then examining the §3553(a) factors, the Court said it was "particularly mindful of the disparity between Brunetti's mandatory life sentence and the sentence a similarly situated defendant would receive today based on recent changes in the law." Eisenga's situation is completely different from the defendant in *Brunetti*. Eisenga's original sentence was fair, not imposed due to a mandatory minimum, and not impacted by subsequent changes in the law. While the Court in *Brunetti* disagreed that defendant's vaccination status weakened his case for compassionate release, the Seventh Circuit has clearly and repeatedly held otherwise.

Examining defendant's health conditions, BOP records indicate he does have moderate sleep apnea, confirmed by a BOP sleep study, for which he received a CPAP machine. He is obese and does have asthma and hypertension, which the BOP is also monitoring and treating. (Gov't Ex. 3). Eisenga complains he isn't getting his previously prescribed antibiotics for a "tick borne" illness he was diagnosed with in 2018. However, BOP sent defendant to an outside infectious disease doctor at the University

7

of Iowa Hospital, who concluded that the defendant does not have Lyme's Disease or babesiosis. (Id). The doctor speculated that he may have an undiagnosed musculoskeletal condition, which could be an autoimmune disorder and which would explain why he responded well to a previous medication, but no diagnosis has been yet confirmed. Eisenga does have health conditions, but these conditions are not so severe as to warrant release in light of his status as fully vaccinated and boosted. (Id).

C.  The 3553(a) Factors Do Not Support Release in Any Event

Even if this Court were to find that Eisenga has demonstrated an "extraordinary and compelling reason," the factors listed in 18 U.S.C. § 3553(a) weigh overwhelmingly against release. Eisenga's crime was one based entirely on greed and one that caused a multi-million-dollar loss to the victim credit union. A substantial reduction in his custodial sentence because of COVID-19 would fail to satisfy the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Eisenga argues the Court should consider his lack of criminal history here, but the Court already considered that factor when deciding to give Eisenga a below-guidelines sentence. (R. 41).

IV.  Conclusion

Eisenga does not currently qualify for release under the First Step Act. He does not present a compelling and extraordinary reason warranting release and his release is inconsistent with the § 3553(a) factors. The United States respectfully asks this Court to deny the defendant's motion.[8]

---

[8] Eisenga raises numerous arguments against the BOP generally, against the quality of BOP healthcare, against BOP administrators, and against BOP COVID-19 policies and procedures. He generally complains that the BOP lacks good faith and asserts the BOP must be manipulating certain statistics. He also

Respectfully submitted this 24th day of March 2022.

>TIMOTHY M. O'SHEA
>Acting United States Attorney
>
>By: _____/s/_____
>MEREDITH P. DUCHEMIN
>Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing document(s) to be filed electronically with the Clerk of the Court through ECF, and since all participants in the case are not registered CM/ECF users that service will be accomplished by United States mail addressed to the person(s) hereinafter named at the place(s) and address(es) stated below which is/are the last known address(es).

>/s/ Meredith Duchemin

---

complains about certain CDC statements, guidelines, and recommendations with respect to COVID-19. The government has not responded to many of these complaints because they do not relate to directly to this defendant or the facility where the defendant is incarcerated. By failing to address these issues, the government does not concede defendant's arguments nor does the government intend to waive any arguments on appeal.