FILED/REC'D

IN THE UNITED STATES DISTRICT COURT    2025 DEC 29 P 1: 55

FOR THE WESTERN DISTRICT OF WISCONSIN    CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

UNITED STATES OF AMERICA,

vs.                                                    Case No. 20-cr-137-wmc

MICHAEL EISENGA,
                    Defendant.

## MOTION TO TERMINATE SUPERVISION PURSUANT TO 18 U.S.C. § 3583(e)

I, Michael Eisenga, Defendant herein, proceeding *pro se,* herewith move that this Court terminate my supervised release pursuant to this Court's authority to do so under 18 U.S.C. § 3583(e).

*Facts*

1.    I was sentenced to a 42-month sentence after being convicted of one count of bank fraud in violation of 18 U.S.C. §1343. I successfully completed my incarceration and began my five-year term of supervised release on September 28, 2023. *Judgment in a Criminal Case,* ECF 40, entered June 29, 2021.

2.    I defrauded Alliant Credit Union by submitting a document that falsely purported to be a lease of property that I controlled to a third-party regional grocery store chain that I knew was not the lessee of the facility. Instead, the grocery store operating there was one open under

one of my affiliate limited liability companies. I did so in order to obtain the refinancing needed

for the facility. Later, when I was unable to find a third-party tenant for the facility, my company

defaulted on the $6.9 million loan. I falsified a lease cancellation agreement that purported to be

an agreement terminating my company's lease to the grocery chain.

      3.      When I learned that Alliant was questioning the defaulted loan, I knew that

discovery of my misconduct was inevitable. I consulted several attorneys. Two advised me to

wait for the ax to fall. The third attorney told me to admit the fraud to Alliant. Within two days, I

had authorized the attorney to reveal everything to Alliant's in-house counsel. Between the time

I admitted his fraud and sentencing, I took several steps to make restitution payments, despite the

fact that no restitution had yet been ordered.

      4.      I served my sentence at USP Thomson satellite camp, a minimum-security facility

in Illinois. I received no disciplinary write-ups while incarcerated, and I completed all *First Step

Act* classes I was directed to take (cognitive behavioral therapy courses, such as anger

management), as well as studying in more than a dozen elective courses. I assisted in leading

several classes that taught inmates how to manage their money. While incarcerated, the Federal

Bureau of Prisons calculated my PATTERN risk assessment score as minimum for recidivism

and minimum for violence.

      5.      Prior to my conviction, I had no criminal history. I have had no new charges or

convictions since my release, and I have not violated any of the terms of my supervised release.

As of December 28, 2025, I will have completed 27 months of supervised release.

      6.      Since my release, I have lived in my apartment at 146 West Mill Street, a unit

owned by my company, 1st American Properties, LLC. I have been actively managing my

company's business interests, a portfolio of commercial and income-producing properties. Since

my release, I have been active in my church, Harvest Evangelical Free Church, Columbus, where I serve as chairman of the Building Committee and lead the Tuesday night Men of God Study Group during the summer months.

7.      I have three children, two of whom are adult and one a 16-year-old high school student for whom I share custody with his mother. We are both active in supporting him in his sports and extracurricular activities. I pay my current $15,000 per month child support on time, and I am working with legal counsel, my former wife and the courts to resolve an arrearage that arose during my incarceration.

8.      I owe substantial restitution, on which I am making monthly payments. I will continue to do so, working through counsel with the U.S. Attorney's Office Financial Litigation Unit to enter into a binding installment agreement.

9.      My Probation Office contacts have been thoroughly courteous and professional, but the very fact of being on supervised release can be a deterrent. The first standard condition of my supervised release is that I am prohibited from "knowingly leav[ing] the judicial district in which defendant is being supervised without the permission of the Court or probation officer." *Judgment in a Criminal Case, supra* at p. 2. Under the terms of my supervision, the Probation Office requires two weeks' advance notice for trips out of the Western District of Wisconsin.[1] The eastern boundary of the City of Columbus lies along the Columbia-Dodge County line, which defines the eastern end of the Western Judicial District of Wisconsin (28 U.S.C. § 130(b)),

---

[1]      My Probation Officer has been especially accommodating in permitting me to travel to one of my company's properties, a vacation house we rent on a short-term basis through VRBO, without the two-week notice, but the strict requirement Standard Condition 1 continues to apply.

3

with a small portion of the city corporation actually extending into Dodge County (and thus into the Eastern District of Wisconsin).

10.    I have informed my Probation Officer that I am seeking to have my supervised release terminated, and he has not objected to my making the filing.

### *Law Governing Early Termination from Supervised Release*

11.    The Supreme Court has recognized that "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson,* 529 U.S. 53, 59 (2000). "Supervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson,* 511 U.S. 39, 50 (1994). Instead, it is "a separate and additional period of monitoring concerned with facilitating the reintegration of the defendant into the community. . . supervised release must follow imprisonment; it cannot be imposed on its own. These differences reflect the rehabilitative character of release by fully disaggregating the punitive and transitional phases of a defendant's sentence." *United States v. Trotter,* 321 F.Supp.3d 337, 345-46 (E.D.N.Y. 2018), *quoting* Mica Moore, *Escaping from Release: Is Supervised Release Custodial under 18 USC § 751(a)?,* 83 U.CHI.L.REV. 2257, 2260-61 (2016).

12.    A congressional statement of policy accompanying the *Sentencing Reform Act* succinctly stated the rehabilitative purpose of supervised release:

> [T]he primary goal of [Supervised Release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.

S.Rep. No. 98-225, at 124 (1983), *as reprinted in* 1984 USCCAN 3182, 3307.

13.    Statutory law permits termination of supervised release early at the discretion of the district court, "at any time after the expiration of one year of supervised release... if it is

satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The "expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *United States v. Emmett,* 749 F.3d 817, 819 (9th Cir. 2014), (quoting 18 U.S.C. § 3583(e)(1)). Section 3583(e) does not categorically require a petitioner to demonstrate exceptionally good behavior "that makes the previously imposed term of supervised release either too harsh or inappropriately tailored to serve' general punishment goals." *United States v. Foster,* Case No. 5:19-cr-00024 (W.D. Va. Feb. 27, 2025), 2025 U.S. Dist. LEXIS 35925, at *2-3, citing *Folks v. United States,* 733 F. Supp. 2d 649, 651 (M.D.N.C. 2010) (quoting *United States v. Lussier,* 104 F.3d 32, 36 (2d Cir. 1997). Rather, this Circuit has held in *United States v. Pregent,* 190 F.3d 279, 282-83 (4th Cir. 1999) that the plain language of 18 U.S.C. § 3583(e) "allows a conduct-based inquiry into the continued necessity for supervision after the individual has served one full year on supervised release"); *compare United States v. Webb,* 724 Fed.Appx. 272, 273 (4th Cir. 2018) (interpreting same subsection in case of revocation of supervised release and holding that revocation requires "the applicable 18 U.S.C. § 3553(a) (2012) factors"); *United States v. Chapman,* 827 F.Supp. 369, 371 (E.D.Va. 1993).

14.    *Pregent* makes clear that "[t]he phrase "the interest of justice" provides the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period. The conjunction "and" used in the statute, however, clearly indicates that a district court must conclude that the early termination of supervised release is warranted both by the individual's conduct and also by the interest of justice." *Id.* at 190 F.3d 283. The "interests of justice" standard provides a court broad

latitude, being served even by an acknowledgement that a defendant's rehabilitation would be served by termination rather than continuing supervision. *See United States v. Linker,* Case No. 2:11-cr-38 (E.D.Va., June 14, 2016), 2016 U.S. Dist. LEXIS 77429, at *2, 7-8 (defendant's "motivations for termination are productive and family-oriented").

15.     The Sentencing Commission has very recently amended the Guidelines addressing supervised release. Amendment[2] to USSG § 5D1.4, governing the early termination of supervised release, became effective on November 1, 2025, codifying the Commission's policy that a presumption should apply that early termination is appropriate when the ends of rehabilitation are substantially met. The amended USSG § 5D1.4 states that "[w]hen determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:

(i)     any history of court-reported violations over the term of supervision;

(ii)    the ability of the defendant to lawfully self-manage (*e.g.,* the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii)   the defendant's substantial compliance with all conditions of supervision;

(iv)    the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v)     a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi)    whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into

---

[2]    Amendment to U.S.S.G. § 5D1.4, *2025 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary* (April 11, 2025), p. 34, found at https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202505_Amendments.pdf (last accessed December 10, 2025).

the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

The Sentencing Commission explained that

> The primary goal of supervised release is to "ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison. . . but still needs supervision and training programs after release." S. Rep. No. 225, 98th Cong., 1st Sess. 54 (1983). Supervised release also functions as an important tool to promote public safety. *See* 18 U.S.C. §§ 3583(c), 3553(a)(2)(C).

*Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, supra* at

p. 50. The Commentary to the amended Guideline observes that "[t]he Commission determined

that violations of probation and supervised release should be addressed separately to reflect their

different purposes. While probation serves all the goals of sentencing, including punishment,

supervised release primarily '*fulfills rehabilitative ends, distinct from those served by*

*incarceration.*'" *Introductory Commentary to U.S.S.G. Chapter 5, Part D,* quoting *Johnson,*

*supra* at 529 U.S. 59[3] (emphasis added).

16.   The *Guidelines* are largely a next-generation adaptation of a detailed criterial "fit"

for judging requests for early termination set out in the 2003 edition of *The Supervision of*

---

[3]       During oral argument before the Supreme Court in *Rico v. United States,* Case No. 24-1056, Justice Jackson said:

> I mean, isn't the whole -- the reason why supervised release is sort of fundamentally different than parole or -- or probation or imprisonment is because it's not imposed for punishment. It's supposed to be about helping this person reintegrate into society, and the amount of time that is necessary to do that is evaluated based on who that person is and what they've done but not based on how much time they previously served in supervised release.

*Oral Argument Transcript* at 4. Found at
https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1056_o7kq.pdf
(last accessed December 18, 2025).

7

*Federal Offenders*, Monograph 109. That publication guides U.S. Probation Officers in their

supervision of persons on post-release control. U.S. Sentencing Commission, *Federal Offenders*

*Sentenced to Supervised Release* (2010) at 3, fn.14. Section 380.10 of *Monograph 109*, entitled

"Early Termination," recommends the consideration of the following factors in deciding whether

to approve early termination requests:

> (i)    "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);
>
> (ii)    the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* at § 3553(a)(2)(B), "to protect the public from further crimes of the defendant *id.* at § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* at § 3553(a)(2)(D);
>
> (iii)    the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* at § 3553(a)(4);
>
> (iv)    "any pertinent policy statement issued by the Sentencing Commission," *id.* at § 3553(a)(5); and
>
> (v)    "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct..." *id.* at § 3553(a)(6).

These factors have been applied by courts in this Circuit in deciding that the ends of supervised

release have been met, justifying early termination under 18 U.S.C. § 3583(e). *See, e.g., United*

*States v. Crisp*, 770 F. Supp. 3d 1124, 1130 (C.D. Ill. 2025) Citing factors listed in *United States*

*v. Cairo*, Case No. 16-CR-81 (E.D. Wis. Aug. 14, 2017), 2017 U.S. Dist. LEXIS 128716, at *3-

4. One district court paraphrased the requirement as being threefold:

> (1)    the defendant must has served at least one year of supervision;
>
> (2)    the government must be given notice and an opportunity to be heard; and
>
> (3)    termination is in the interest of justice based on the pertinent § 3553(a) factors and the defendant's conduct.

*United States v. O'Hara,* Case No. 00-CR-170, 2011 U.S. Dist. LEXIS 109097, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011) (citing *United States v. Medina,* 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998) and *United States v. Lowe,* 632 F.3d 996, 998-99 (7th Cir. 2011)). Courts have broad discretion when deciding motions for early termination, provided that the court has shown its consideration of the factors under 18 U.S.C. § 3553(a). *United States v. Temple,* 464 Fed. Appx. 541, 544 (7th Cir. 2012). Supervised release is imposed as a part of nearly every sentence, even though "it is required in fewer than half of federal cases." *United States v. Thomas,* 346 F.Supp. 3d 326, 334 (E.D.N.Y. 2018), citing Christine S. Scott-Hayward, *Shadow Sentencing: The Imposition of Federal Supervised Release,* 18 BERKELEY J. CRIM. L. 180, 192 (2013) (judges in the Eastern District of New York impose supervised release in 94% of cases). "It is accompanied by the "threat of never-ending supervision" due to violations of supervised release conditions, which may result in incarceration and/or lengthened terms of supervised release." *Thomas, supra, citing* Nora V. Demleitner, *How to Change the Philosophy and Practice of Probation and Supervised Release: Data Analytics, Cost Control, Focus on Reentry, and a Clear Mission,* 28 FED. SENT'G REP. 231, 232 (2016).

17.    A court's authority to grant early termination of supervised release "provides an opportunity to reevaluate the efficacy of a supervised release term throughout its duration. Termination is appropriate when the rehabilitative goals of supervised release may no longer be attained or can be attained at too great a cost to the defendant and society." *Thomas, supra* at 346 F.Supp. 335, *citing Trotter, supra* at 321 F.Supp.3d 364 (terminating supervised release for a habitual user of marijuana when continued supervision was unlikely to rehabilitate him.)

18.    In this Circuit, a district court may terminate supervised release "if the following conditions are met: (1) the defendant has served at least one year of supervision; (2) the

government is given notice and an opportunity to be heard; and (3) termination is in the interest of justice based on the pertinent § 3553(a) factors and the defendant's conduct." *United States v. Branscumb*, Case No. 1:09-CR-10023 (C.D. Ill. Nov. 12, 2019), 2019 U.S. Dist. LEXIS 208332, at \*7-8, citing 18 U.S.C. § 3583(e)(1) and *United States v. O'Hara*, Case No. 00-CR-170 (E.D. Wis. Sept. 16, 2011), 2011 U.S. Dist. LEXIS 109097, at \*6, 2011 WL 4356322, at \*3. *Branscumb* held that a "defendant should demonstrate exceptionally good behavior or unforeseen circumstances warranting the early termination." *Branscumb, supra,* citing *United States v. Kay*, 283 Fed.Appx 944, 946-47 (3d Cir. 2008); *Lussier, supra* at 104 F.3d 336; *Folks v. United States*, 733 F. Supp. 2d 649, 651-52 (M.D.N.C. 2010); *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005); *United States v. Caruso*, 241 F. Supp. 2d 466, 468-69 (D.N.J. 2003); and *United States v. Medina*, 17 F. Supp. 2d 245, 246-47 (S.D.N.Y. 1998). However, that standard has since been rejected by the Sentencing Commission in U.S.S.G. § 5D1.4.

19.     In a study performed last year by Thomas H. Cohen, the Branch Chief of the Data Unit for the Probation and Pretrial Services Office of the Administrative Office of the United States Courts, data included from 296,023 persons whose supervision terms were successfully closed in the 94 federal district courts during the ten-year period encompassing fiscal years 2014 through 2023 showed that, after matching individuals with similar offense and personal characteristics, supervisees with early termination are two percentage points *less* likely to recidivate (10% rearrested) than their regular termination counterparts (12% rearrested). The

study concluded that "supervisees granted early termination under current policies pose no greater risk to the community than those who serve a full term of supervision." *Id.* at 23.[4]

### *Argument*

20.    I should be granted early termination from supervised release. I have complied with the terms of my supervised release, having finished half of my term. I am responsibly managing my business, generating income to support myself and my son, and to make regular restitution payments. I am active in my faith community and my minor son's life. Nothing in my life suggests that I have not been fully rehabilitated.

21.    My crime was a single variance in a law-abiding life. I do not excuse my misconduct, but I now understand the lapses in my thinking that led to a destructive decision to save a flailing investment. I will never again do such a thing.

22.    I served my sentence without blemish and have displayed lawful and compliant conduct on supervised release. Terminating supervision at this point, when I am fully rehabilitated, would conserve government resources while removing unnecessary impediments to my supporting my family.

23.    I pose no threat of reoffending. On July 19, 2019 (and amended January 15, 2020), the U.S. Department of Justice released a proposed risk assessment model, the *Prisoner Assessment Tool Targeting Estimated Risk and Needs* system (known as "PATTERN") to determine whether federal prisoners present a risk of recidivism.[5] As noted, application of my

---

[4]    *See* Cohen, Thomas H., *Early Termination: Shortening Federal Supervision Terms Without Endangering Public Safety* (Administrative Conference of U.S. Courts, December 2024) found at https://www.uscourts.gov/sites/default/files/document/88_3_1.pdf (last accessed December 18, 2025).

record to the 17 factors making up the PATTERN placed me in the minimum risk level for risk

of recidivism and violence. The *First Step Act of 2018: Risk and Needs Assessment System* at pp.

52-54. Under the PATTERN scoring system, there are three higher levels of risk in the system,

but none lower. *Id.* at Table 4, p. 58. Statistically, a "minimum" level means that I have a less

than 10% chance of recidivism and less than a 5% chance that I will commit a violent offense.[6]

Beyond the numbers, a review of my history since my single offense years ago makes it clear

that the Court will never see me in the defendant's dock again.

***Conclusion***

24.     I am 54 years old and never want to be involved in criminal misconduct again.

Now, I want to enjoy my family and to build a strong future for retirement. Nothing in my

prison record or record on supervised release suggests that my rehabilitation is incomplete. All

of the foregoing fully support the conclusion that the interests of justice would be served by the

early termination of my supervised release.

---

[5]     Dept of Justice, *The First Step Act of 2018: Risk and Needs Assessment System* (July 19, 2019), found at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last visited December 18, 2025). PATTERN was modified and adopted in final form on January 15, 2020. Dept. of Justice, *The First Step Act of 2018: Risk and Needs Assessment System Update - January 2020* (January 15, 2020) ("PATTERN II"). Found at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (last visited December 18, 2025).

[6]     The DOJ's *First Step Act Annual Report - June 2024* found that the recidivism rate for 26,328 inmates with "minimum" recidivism scores was 2.8%. My "minimum" recidivism category means that my risk of recidivism, judging from real-world data, is slight. *Dept of Justice, First Step Act Annual Report - June 2024*, at p. 42, found at https://www.bop.gov/inmates/fsa/docs/first-step-act-annual-report-june-2024.pdf (last accessed December 10, 2025).

**WHEREFORE,** my *Motion for Early Termination of Supervised Release* should be granted.

Respectfully submitted,

December 27, 2025

Michael Eisenga
(Reg. No. 22263-509)
146 West Mill Street, Apt. A
Columbus, WI 53925
Phone +1 (920) 210-7790
Email: meisenga@firstamericanusa.com